UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RASHAUN BLANFORD,

               *Plaintiff*,

    -against-                21-CV-0231

BANKS et. al.,                  TJM/CFH

               *Defendants*.
_____

**STATEMENT PURSUANT TO RULE 56.1(a)**

Pursuant to Rule 56.1(a) of the Local Rules of this Court, Defendants C.O. James Johnson, C.O. Shane Banks, Brian Demeree, and Sarah DeRocco (hereinafter collectively referred to as "Defendants"), contend that as to the following material facts, no genuine issue exists:[1]

1. Plaintiff Rashaun Blanford (DIN# 18B0908) ("Plaintiff") is an incarcerated individual in the care and custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Declaration of Brittany M. Haner (hereinafter "Haner Decl."), Ex. A at p. 11.

2. Plaintiff is currently housed at Marcy Correctional Facility ("Marcy"). Dkt. 86. Plaintiff was housed at Marcy at all times relevant to the incidents described in the Complaint. Dkt. 1; Declaration of Brian Edwards, Ex. A. Plaintiff was transferred to Attica Correctional Facility on March 4, 2021 and remained there through June 21, 2021.

---

[1] Defendants assume the following facts stated herein from Plaintiff's complaint and deposition as true for the purposes of their Motion for Summary Judgement only. In the event this matter proceeds to trial, Defendants reserve the right to dispute any facts stated herein and do not waive any rights associated therewith.

## RELEVANT PROCEDURAL HISTORY

3. Plaintiff initiated this action on March 1, 2021 with the filing of his Complaint. Dkt. 1. On March 24, 2021, Plaintiff filed a Motion to Proceed In Forma Pauperis ("IFP"). Dkt. 3.

4. On April 30, 2021, via review pursuant to 28 U.S.C. §§ 1915(e) and 1915A, the Court granted Plaintiff's application to proceed IFP, dismissed certain claims, and directed the remaining defendants to respond to the Complaint. *See generally* Dkt.14.

5. The following claims survived the Court's review and required a response:

(1) Eighth Amendment excessive force claim against Johnson;

(2) Eighth Amendment failure-to-intervene claim against Banks;

(3) Eight Amendment sexual assault claim against Banks;

(4) Eight Amendment deliberate medical indifference claim against DeRocco and Demeree; and

(5) New York state law medical malpractice claim against DeRocco.

*Id.* at 12.

6. On May 17, 2021, Plaintiff filed a Supplemental Complaint, which stated claims consistent with the earlier Complaint, was accepted for filing on May 19, 2021. Dkts. 17, 18.

7. Defendants Answered the Complaint and Supplemental Complaint on May 24, 2021. Dkt. 21.

## PLAINTIFF'S ACT OF SELF-HARM

8. On February 2, 2021, while housed in the RMHU at Marcy, Plaintiff allegedly inserted two pen tips into his penis. Dkt. 1 p. 2.

9. Following Plaintiff's act of self-harm, Plaintiff was to be escorted out of his cell by Officer Johnson and taken to a contraband watch unit, as ordered by non-party Sergeant

2

Davis. Declaration of James Johnson ("Johnson Decl.") ¶ 6. Sergeant Davis and Officer Banks accompanied Officer Johnson to Plaintiff's cell for the escort. *Id.*

## USE OF FORCE

10.     Upon arriving at Plaintiff's cell, Sergeant Davis informed Plaintiff that he was being escorted to the contraband watch unit. *Id.* ¶ 7; Declaration of Shane Banks ("Banks Decl.") ¶ 6. Davis then instructed Plaintiff to place his hands through the hatch of his cell so his wrists could be placed in mechanical restraints for the escort pursuant to DOCCS policies. Johnson Decl. ¶ 7; Banks Decl. ¶ 8.

11.     Plaintiff complied with Sergeant Davis' direct order and placed his hands behind his back, and then put them through the cell door hatch. Johnson Decl. ¶ 8; Banks Decl. ¶ 8. At that point, Officer Johnson placed mechanical restraints on Plaintiff's wrists. *Id.* Next, Plaintiff removed his hands from the cell door hatch and stepped into his cell so Officer Banks could open the cell door. *Id.*

12.     Officer Banks opened Plaintiff's cell door, and Officer Johnson observed that Plaintiff had a pillowcase containing his property between himself and the cell door. Johnson Decl. ¶ 9; Banks Decl. ¶ 8. Johnson then took hold of Plaintiff's wrists as Banks knelt down to move Plaintiff's property out of the way to ensure that Plaintiff could safely exit the cell. Johnson Decl. ¶ 10; Banks Decl. ¶ 9.

13.     As Officer Banks was moving Plaintiff's property out of the way, Plaintiff attempted to kick Banks with a backwards mule-style kick. Johnson Decl. ¶ 11; Banks Decl. ¶ 9.

14.     Officers Johnson and Banks brought Plaintiff to the ground to apply mechanical restraints to his wrists while Plaintiff resisted, and continued to resist, despite direct orders to stop. Johnson Decl. ¶¶ 13, 14; Banks Decl. ¶ 11, 12. Officer Johnson continued to hold onto the

3

mechanical restraints securing Plaintiff's wrists and applied, and maintained, pressure on Plaintiff's upper back until responding officers arrived. Johnson Decl. ¶ 14; Banks Decl. ¶ 12.

15. Once responding officers arrived, Plaintiff's ankles were placed in mechanical restraints, at which point Plaintiff ceased his resistance. Johnson Decl. ¶ 15; Banks Decl. ¶ 13. Responding officers then took control of Plaintiff and escorted him off the housing unit. *Id.* In all, the incident was approximately two minutes' duration. Johnson Decl. ¶ 18; Banks Decl. ¶ 15.

16. The incident was captured by cameras at the facility. Declaration of William Snyder, Ex. A.

## MEDICAL TREATMENT

16. After Plaintiff was taken off the housing unit, he was medically examined by Nurse DeRocco. Declaration of Sarah DeRocco ("DeRocco Decl.") ¶ 8; Dkt. 1 pp. 2, 6.

17. Nurse DeRocco did not observe any visible trauma to Plaintiff's penis and consulted with the Marcy emergency room provider, non-party Nurse Practitioner ("NP") Corigliano. *Id.* ¶¶ 10, 11.

18. Consistent with NP Corigliano's advice, DeRocco monitored Plaintiff with the expectation that the pen tips would pass when Plaintiff urinated. *Id.* ¶ 11. She advised Plaintiff that there was no medical necessity for him to be sent to the hospital. *Id.* ¶ 10.

19. Another nurse evaluated Plaintiff later that day. *Id.* ¶ 14, Ex. B.

20. On February 3, 2021, while Plaintiff was in Marcy's Residential Crisis Treatment Program, Rehabilitation Coordinator Demeree assisted an OMH psychiatrist to screen Plaintiff for suicide indicators. Declaration of Brian Demeree ("Demeree Decl.") ¶ 7, Ex. A.

21. Plaintiff reported to Demeree that he was not sent to a hospital following his act of self-harm. Demeree Decl. ¶ 8.

22. Demeree observed Plaintiff urinating on his cell floor. *Id.*, Ex. A.

23. Demeree also reviewed Plaintiff's admission documents and observed the nursing assessment records from Plaintiff's medical evaluation that was performed the day prior. Demeree Decl. ¶ 10, Ex. B. Demeree observed that medical staff was already aware of the issue. Demeree Decl. ¶ 11.

24. Demeree has no medical training or background and is prohibited from providing medical treatment to incarcerated individuals at Marcy. *Id.* ¶ 12.

25. Nurse DeRocco observed Plaintiff on February 3 and 4, 2021, at which time Plaintiff made no complaints and did not appear to be in distress. DeRocco Decl. ¶ 15, Ex. B.

26. On February 10, 2021, Plaintiff complained of the alleged pen tips in his penis and reported to Nurse DeRocco that he was not having any difficulty urinating. DeRocco Decl. ¶ 16. DeRocco advised Plaintiff that she would notify NP Corigliano for follow-up. *Id*.

27. On February 12, 2021, NP Corigliano examined Plaintiff and did not observe any irritation to Plaintiff's urinary meatus. *Id.* ¶ 17. Plaintiff did not appear to be in any pain, and NP Corigliano reported that she was able to move and manipulate the shaft of Plaintiff's penis without concerns. *Id.* NP Corigliano also determined there was no evidence of a foreign body in Plaintiff's penis and that a trip to an outside hospital was unnecessary. *Id.*, Ex. B at p. 9.

28. NP Corigliano ordered a urinalysis swab of Plaintiff's penis as additional verification of her findings. DeRocco Decl. ¶ 17, Ex. B.

29. On February 16, 2021, Plaintiff refused to provide a urine sample for urinalysis. DeRocco Decl. ¶ 18, Ex. B.

30. On February 18, 2021, DeRocco received a letter from Plaintiff alleging that he was being denied medical care. DeRocco Decl. ¶ 19. After consulting with NP Corigliano, a new

order for urinalysis was written. *Id.* The same day, DeRocco performed a straight catheterization of Plaintiff's urethra wherein she obtained a urine sample. *Id.* The urine appeared normal and was sent for analysis. *Id.*

31. Plaintiff testified in his deposition that an Xray was performed at another facility, which showed nothing inside his penis. Haner Decl., Ex. A at p. 51.

**PLAINTIFF'S FAILURE TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES**

32. Marcy has an inmate grievance program through which incarcerated individuals may submit complaints about the conditions of their confinement, including alleged assault and denial of medical care.

However, Plaintiff did not file a grievance related to the alleged excessive force, failure to intervene, deliberate medical indifference, or medical malpractice on February 2, 2019 or thereafter. Declaration of Erin Pfendler Decl. ¶ 17 (no grievances filed at Marcy); Declaration of Brian Edwards ¶¶ 16-17 (no grievances filed at Attica Correctional Facility); *see also* Declaration of Rachel Seguin ("Seguin Decl.") ¶ 15 (no appeals to Central Office Review Committee).

Dated: Albany, New York
September 28, 2022

           LETITIA JAMES
           Attorney General of the State of New York
           *Attorney for Defendants*
           The Capitol
           Albany, New York 12224

           By: <u>s/ Brittany M. Haner</u>
           Brittany M. Haner
           Assistant Attorney General, of Counsel
           Bar Roll No. 700987
           The Capitol
           Albany, New York 12224-0341
           Telephone: (518) 776-2389
           Email: Brittany.Haner@ag.ny.gov