UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

RASHAUN BLANFORD,

*Plaintiff*,

-against-                                          21-CV-0231

BANKS et. al.,                                                                        TJM/CFH

*Defendants*.

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224

Brittany M. Haner
Assistant Attorney General, of Counsel
Bar Roll No. 700987
Telephone:  (518) 776-2389
Fax:  (518) 915-7740 (Not for service of papers)

Date: September 28, 2022

## Table of Contents

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 1

STANDARD OF REVIEW ........................................................................................................... 5

      POINT I

           PLAINTIFF FAILED TO EXHAUST AVAILABLE
           ADMINISTRATIVE REMEDIES BEFORE COMMENCING THIS
           ACTION ..................................................................................................................... 6

      POINT II

           PLAINTIFF CANNOT ESTABLISH AN EXCESSIVE FORCE CLAIM .......... 8

      POINT III

           PLAINTIFF'S FAILURE-TO-INTERVENE CLAIMS AGAINST
           DEFENDANT BANKS SHOULD BE DISMISSED.......................................... 11

      POINT IV

           PLAINTIFF'S EIGHTH AMENDMENT SEXUAL ASSAULT CLAIM
           AGAINST DEFENDANT BANKS SHOULD BE DISMISSED ....................... 11

      POINT V

           PLAINTIFF'S MEDICAL INDIFFERENCE CLAIM SHOULD BE
           DISMISSED ............................................................................................................ 13

      POINT V I

           PLAINTIFF'S STATE LAW MEDICAL MALPRACTICE CLAIM
           MUST BE DISMISSED AS A MATTER OF LAW........................................... 17

CONCLUSION............................................................................................................................ 199

## TABLE OF AUTHORITIES

CASES                                                                 PAGE(S)

*Adams v. Anderson*,
    84 A.D.3d 1522 (3d Dept 2011) ............................................................17

*Addona v. D'Andrea*,
    692 Fed. Appx. 76 ................................................................................11

*Amador v. Andrews*,
    655 F.3d 89 (2d Cir. 2011) ....................................................................6

*Amodio v. Wolpert*,
    52 A.D.3d 1078 (3d Dept. 2008) ............................................................17

*Anderson v. Branen*,
    17 F.3d 552 (2d Cir. 1994) ....................................................................17

*Bell v. Wolfish*,
    441 U.S. 520 (1979) ..............................................................................12

*Benitez v. Ham*,
    2009 WL 3486379 (N.D.N.Y. 2009) ......................................................9

*Benitez v. Healy*,
    2017 U.S. Dist. LEXIS 88227 (N.D.N.Y. 2017) ....................................10

*Blyden v. Mancusi*,
    186 F.3d 252 (2d Cir. 1999) ..................................................................8

*Burroughs v. Mitchell*,
    325 F. Supp. 3d 249 (N.D.N.Y. 2018) ............................................14, 16

*Carey v. Crescenzi*,
    923 F2d 18 (2d Cir. 1991) ....................................................................5

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ..............................................................................5

*Chance v. Armstrong*,
    143 F.3d 698 (2d Cir. 1998) ............................................................13-14

*Chase v. Cayuga Medical Center at Ithaca, Inc.*,
    2 A.D.3d 990 (3d Dept. 2003) ..............................................................18

*Crawford v. Cuomo*,
    796 F.3d 252 (2d Cir. 2015) ............................................................11-12

*Dean v. Coughlin*,
    804 F.2d 207 (2d Cir. 1986).............................................................................14

*Delee v. Hannigan*,
    729 Fed. Appx. 25 (2d Cir. 2018) ....................................................................12

*Delorenzo v. St. Clare's Hospital of Schenectady*,
    69 A.D.3d 1177 ........................................................................................... 17-18

*Domaradzki v. Glen Cove*,
    242 A.D.2d 282 (2d Dept. 1997) ......................................................................18

*Erie R.R. v. Tompkines*,
    304 U.S. 64 (1938).............................................................................................16

*Estelle v. Gamble*,
    429 U.S. 97 (1976).............................................................................................12

*Farmer v. Brennan*,
    511 U.S. 825 ......................................................................................................13

*Giambona v. Stein*,
    265 A.D.2d 775 (3d Dept. 1999) ......................................................................17

*Green v. Morse*,
    2009 U.S. Dist. LEXIS 42368 (W.D.N.Y. 2009) ...................................................10

*Green v. Morse*,
    2009 WL 1401642 (W.D.N.Y. 2009) ...................................................................8

*Hathaway v. Coughlin*,
    99 F.3d 550 (2d Cir. 1996)................................................................................13

*Horth v. Mansur*,
    243 A.D.2d 1041 (3d Dept. 1997) ....................................................................17

*Jackson v. Village of Ilion, New York*,
    2016 WL 126392 (N.D.N.Y. 2016) ....................................................................11

*Jeffreys v. City of New York*,
    426 F.3d 549 (2d Cir. 2005)...........................................................................9-10

*Jones v. Bock*,
    549 U.S. 199 (2007)............................................................................................6

*Kalfus v. New York and Presbyterian Hosp.*,
    476 F. App'x 877 (2d Cir. 2012) ......................................................................10

*Kerzer v. Kingly Mfg.*,
　　156 F.3d 396 (2d Cir. 1998) .................................................................5

*Klein v. Fischer*,
　　No. 2015 WL 5174031 (N.D.N.Y. 2015) ...............................................5

*Madison v. Nesmith*,
　　2009 WL 666398 (N.D.N.Y. 2009) .......................................................14

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
　　475 U.S. 574 (1986) ..............................................................................5

*Menard v. Feinberg*,
　　60 A.D.3d 1135 (3d Dept. 2009) .........................................................17

*Murray v. Goord*,
　　668 F. Supp. 2d 344 (N.D.N.Y. 2009) ...................................................7

*Olinsky-Paul v. Jaffe*,
　　105 A.D.3d 1181 (3d Dept. 2013) .......................................................17

*Pooler v. Nassau Univ. Med. Ctr.*,
　　848 F. Supp. 2d 332 (E.D.N.Y. 2012) .................................................13

*Price v. City of New York*,
　　2012 WL 3798227 (S.D.N.Y. 2012) ......................................................8

*Rossi v. Arnot Ogden Medical Center*,
　　268 A.D.2d 916,917 (3d Dept. 2000), lv. denied, 95 N.Y.2d 751 (2000) .............17

*Ruggiero v. County of Orange*,
　　467 F.3d 170 (2d Cir. 2006) .................................................................6

*Salahuddin v. Goord*,
　　467 F.3d 263 (2d Cir. 2006) .................................................................5

*Sanchezmartino v. Demmon*,
　　2017 WL 1098168 (N.D.N.Y. 2017) ......................................................8

*Scott v. Harris*,
　　550 U.S. 372 (2007) ..............................................................................8

*Shepherd v. Fisher*,
　　2017 U.S. Dist. LEXIS 22772 (S.D.N.Y. 2017) ...................................12

*Simcoe v. Gray*,
　　670 Fed. Appx. 725 (2d Cir. 2016) .....................................................10

*Skelly-Hand v. Lizardi,*
    111 A.D.3d 1187 (3d Dept. 2013) .......................................................17

*Sloane v. Repsher,*
    263 A.D.2d 906,908 (3d Dept. 1999) ..................................................17

*Smith v. Carpenter,*
    316 F.3d 178 (2d Cir. 2003).......................................................... 12-13

*Stewart v. Ellis Hospital,*
    198 A.D.2d 559,560 (3dDept. 1993) ..................................................17

*Suib v. Keller,*
    6 A.D.3d 804 (3d Dept. 2004) ..........................................................17

*Thomas v. Kinderman,*
    2017 WL 8293605 (N.D.N.Y. 2017) ....................................................8

*Toomey v. Adirondack Surgical Assocs.,*
    280 A.D.2d 754 (3d Dept. 2001) .......................................................17

*Torres v. Carry,*
    672 F. Supp. 2d 338 (S.D.N.Y. 2009).....................................................7

*Valentine v. Lopez,*
    283 A.D.2d 739 (3d Dept. 2001) .......................................................17

*Zuckerman v. City of New York,*
    49 N.Y.2d 557 (1980) ....................................................................17

## CONSTITUTIONS

Eighth Amendment ....................................................... 8, 11-12, 14

## FEDERAL STATUTES

42 U.S.C.
    § 1983............................................................................ 1, 6-7
    § 1997e(a) ..........................................................................6

## STATE STATUTES

PLRA ...............................................................................6, 7, 8

PREA ................................................................................7

**STATE REGULATIONS**

7 N.Y.C.R.R.
  § 701.5...................................................................................................6
  § 701.5(a)(1) .........................................................................................7

4. NYCRR Title 7 ...................................................................................6

**RULES**

CPLR
  § 3212(b) .............................................................................................17

FRCP 56.....................................................................................................1

FRCP 56(a) ................................................................................................5

FRCP 56(e) ................................................................................................5

## PRELIMINARY STATEMENT

Plaintiff, Rashaun Blanford, commenced this action pursuant to 42 U.S.C. § 1983 by filing a Complaint on March 1, 2021. *See* Dkt. 1. Plaintiff at all times relevant to this action was incarcerated in the Residential Mental Health Unit ("RMHU") at Marcy Correctional Facility ('Marcy"). Plaintiff brings claims for excessive force, failure to intervene, sexual assault, deliberate medical indifference, and state law medical malpractice. Plaintiff's claims relate to a February 2021 event wherein he allegedly inserted two pen tips into his penis, after which correction staff used force against Plaintiff. Defendants, Correction Officer James Johnson, Correction Officer Shane Banks, Office of Mental Health ("OMH") Rehabilitation Coordinator at Marcy's RMHU Brian Demeree, and medical nurse Sarah DeRocco ("Nurse DeRocco") (collectively "Defendants"), now move for summary judgment seeking dismissal of Plaintiff's claims pursuant to FRCP 56.

## STATEMENT OF FACTS

On February 2, 2021, while housed in the RMHU at Marcy, Plaintiff allegedly inserted two pen tips into his penis. Dkt. 1 p. 2. Following Plaintiff's act of self-harm, Plaintiff was to be escorted out of his cell by Officer Johnson and taken to a contraband watch unit, as ordered by non-party Sergeant Davis. Declaration of James Johnson ("Johnson Decl.") ¶ 6, Ex. A.[1] Sergeant Davis and Officer Banks accompanied Officer Johnson to Plaintiff's cell for the escort. *Id.*

*Use of Force*

Upon arriving at Plaintiff's cell, Sergeant Davis informed Plaintiff that he was being escorted to the contraband watch unit. *Id.* ¶ 7; Declaration of Shane Banks ("Banks Decl.") ¶ 6.

---

[1] Officer James Johnson was logged, in error, as "David Johnson" in certain computer entries for the Use of Force Report related to this incident. *See* Johnson Decl., Ex. A pp. 000001, 000003. However, James Johnson is the officer that was involved. *See id.* p. 000007 (Staff Memorandum written and signed by James Johnson).

1

Davis then instructed Plaintiff to place his hands through the hatch of his cell so his wrists could be placed in mechanical restraints for the escort pursuant to DOCCS policies. Johnson Decl. ¶ 7; Banks Decl. ¶ 8. Plaintiff complied with Sergeant Davis' direct order and placed his hands behind his back, and then put them through the cell door hatch. Johnson Decl. ¶ 8; Banks Decl. ¶ 8. At that point, Officer Johnson placed mechanical restraints on Plaintiff's wrists. *Id.* Next, Plaintiff removed his hands from the cell door hatch and stepped into his cell so Officer Banks could open the cell door. *Id.*

Officer Banks opened the cell door, and Officer Johnson observed that Plaintiff had a pillowcase containing his property between himself and the cell door. Johnson Decl. ¶ 9; Banks Decl. ¶ 8. Johnson then took hold of Plaintiff's wrists as Banks knelt down to move Plaintiff's property out of the way to ensure that Plaintiff could safely exit the cell. Johnson Decl. ¶ 10; Banks Decl. ¶ 9. As Officer Banks was moving Plaintiff's property out of the way, Plaintiff attempted to kick Banks with a backwards mule-style kick. Johnson Decl. ¶ 11; Banks Decl. ¶ 9. Due to Plaintiff's attempted assault, force became necessary to maintain the safety and security of the facility, correction staff members, and other incarcerated individuals. Johnson Decl. ¶ 12; Banks Decl. ¶ 10. Officers Johnson and Banks brought Plaintiff to the ground to apply mechanical restraints to his wrists while Plaintiff resisted, and continued to resist, despite direct orders to stop. Johnson Decl. ¶¶ 13, 14; Banks Decl. ¶ 11, 12. Officer Johnson continued to hold onto the mechanical restraints securing Plaintiff's wrists and applied, and maintained, pressure on Plaintiff's upper back until responding officers arrived. Johnson Decl. ¶ 14; Banks Decl. ¶ 12.

Once responding officers arrived, Plaintiff's ankles were placed in mechanical restraints, at which point Plaintiff ceased his resistance. Johnson Decl. ¶ 15; Banks Decl. ¶ 13. Responding officers then took control of Plaintiff and escorted him off the housing unit. *Id.* In all, the incident

was approximately two minutes in duration. Johnson Decl. ¶ 18; Banks Decl. ¶ 15. Plaintiff alleges

that Officer Banks' hand came into contact with Plaintiff's buttocks during the use of force for "a

split second." Declaration of Brittany M. Haner ("Haner Aff."), Ex. A p. 77; *see also* Dkt. 1 pp. 2,

5.

*Medical Treatment*

After Plaintiff was taken off the housing unit, he was medically examined by Nurse

DeRocco. Declaration of Sarah DeRocco ("DeRocco Decl.") ¶ 8; Dkt. 1 pp. 2, 6. Nurse DeRocco

did not observe any visible trauma to Plaintiff's penis and consulted with the Marcy emergency

room provider, non-party Nurse Practitioner ("NP") Corigliano. DeRocco Decl. ¶¶ 10, 11.

Consistent with NP Corigliano's advice, DeRocco monitored Plaintiff with the expectation that

the pen tips would pass when Plaintiff urinated. *Id.* ¶ 11. She advised Plaintiff that there was no

medical necessity for him to be sent to the hospital. *Id.* ¶ 12. Another nurse evaluated Plaintiff later

that day. *Id.* ¶ 14, Ex. B.

On February 3, 2021, while Plaintiff was in Marcy's Residential Crisis Treatment Program,

Rehabilitation Coordinator Demeree assisted an OMH psychiatrist to screen Plaintiff for suicide

indicators. Declaration of Brian Demeree ("Demeree Decl.") ¶ 7, Ex. A. Plaintiff reported to

Demeree that he was not sent to a hospital following his act of self-harm. Demeree Decl. ¶ 8.

Demeree observed Plaintiff urinating on his cell floor. *Id.*, Ex. A. Demeree also reviewed

Plaintiff's admission documents and observed the nursing assessment records from Plaintiff's

medical evaluation that was performed the day prior. Demeree Decl. ¶ 10, Ex. B.  Demeree

observed that medical staff was already aware of the issue and thus recognized that no further

action was necessary. Demeree Decl. ¶ 11. Demeree has no medical training or background and is

prohibited from providing medical treatment to incarcerated individuals at Marcy. *Id.* ¶ 12.

Nurse DeRocco observed Plaintiff on February 3 and 4, 2021, at which time Plaintiff made no complaints and did not appear to be in distress. DeRocco Decl. ¶ 15, Ex. B. On February 10, 2021, Plaintiff complained of the alleged pen tips in his penis and reported to Nurse DeRocco that he was not having any difficulty urinating. DeRocco Decl. ¶ 16. DeRocco advised Plaintiff that she would notify NP Corigliano for follow-up. *Id.*

On February 12, 2021, NP Corigliano examined Plaintiff and did not observe any irritation to Plaintiff's urinary meatus. *Id.* ¶ 17. Plaintiff did not appear to be in any pain, and NP Corigliano reported that she was able to move and manipulate the shaft of Plaintiff's penis without concerns. *Id.* NP Corigliano also determined there was no evidence of a foreign body in Plaintiff's penis and that a trip to an outside hospital was unnecessary. *Id.*, Ex. B at p. 9. NP Corigliano ordered a urinalysis swab of Plaintiff's penis as additional verification of her findings. DeRocco Decl. ¶ 1, Ex. B. On February 16, 2021, Plaintiff refused to provide a urine sample for urinalysis. DeRocco Decl. ¶ 18, Ex. B.

On February 18, 2021, DeRocco received a letter from Plaintiff alleging that he was being denied medical care. DeRocco Decl. ¶ 19. After consulting with NP Corigliano, a new order for urinalysis was written. *Id.* The same day, DeRocco performed a straight catheterization of Plaintiff's urethra wherein she obtained a urine sample. *Id.* The urine appeared normal and was sent for analysis. *Id.* Plaintiff testified that an Xray was performed at another facility, which showed nothing inside his penis. Haner Decl., Ex. A at p. 51.

*Failure to Exhaust Available Administrative Remedies*

Marcy has an inmate grievance program through which incarcerated individuals may submit complaints about the conditions of their confinement, including alleged assault and denial of medical care.  The grievance program was available to Plaintiff, but Plaintiff did not file a

grievance related to the alleged excessive force, failure to intervene, deliberate medical indifference, or medical malpractice on February 2, 2019 or thereafter. Declaration of Erin Pfendler Decl. ¶ 17 (no grievances filed at Marcy); Declaration of Brian Edwards ¶¶ 16-17 (no grievances filed at Attica Correctional Facility); *see also* Declaration of Rachel Seguin ("Seguin Decl.") ¶ 15 (no appeals to Central Office Review Committee).

## STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FRCP 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of showing that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323. If this initial burden is met, the opposing party must show that there is a material dispute of fact for trial. *See* FRCP 56(e); *Celotex*, 477 U.S. at 324.

Although the evidence and reasonable inferences should be construed in favor of the non-movant, the non-movant must nonetheless "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). To defeat a motion for summary judgment, the non-movant must point to specific evidence showing a genuine issue for trial. *See Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006). "Conclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). Even a *pro se* party's "bald assertion, unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Klein v. Fischer*, No. 2015 WL 5174031, at *10 (N.D.N.Y. 2015) (internal quotation omitted); *see Carey v. Crescenzi*, 923 F2d 18, 21 (2d Cir. 1991).

5

**POINT I**

**PLAINTIFF FAILED TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES
BEFORE COMMENCING THIS ACTION**

The Prison Litigation Reform Act ("PLRA") governs federal civil rights litigation by inmates. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under § 1983] . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Exhaustion is mandatory -- unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (citations omitted); *see Jones v. Bock*, 549 U.S. 199, 219-20 (2007) ("no unexhausted claim may be considered").

To exhaust administrative remedies, an inmate must complete the administrative review process in accordance with the rules applicable to the institution in which he is confined. *See Jones*, 549 U.S. at 218, citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "The PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (internal cites and quotes omitted). Therefore, exhaustion demands compliance with an agency's deadlines and other critical procedural rules, and "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement." *Id.* at 176.

DOCCS' inmate grievance program consists of a three-step grievance and appeal procedure. *See* 7 N.Y.C.R.R. § 701.5. The grievance process is also described in detail in DOCCS Directive #4040. Pfendler Decl. ¶ 4. NYCRR Title 7 and Directive #4040 are available in the Marcy Correctional Facility ("Marcy') law library. *Id.* Only after an inmate has properly exhausted all three levels of review may he or she seek relief pursuant to Section 1983 in federal court. *Torres*

*v. Carry*, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009); *Murray v. Goord*, 668 F. Supp. 2d 344, 356 (N.D.N.Y. 2009).

To start the grievance process, an incarcerated individual sends a written complaint to the grievance office. Pfendler Decl.¶ 5. A grievance must be filed at the facility where the incarcerated individual is housed even if the grievance pertains to another facility. 7 N.Y.C.R.R. § 701.5(a)(1); Pfendler Decl. ¶ 6. Grievances are investigated and determined by the Inmate Grievance Resolution Committee ("IGRC"). *Id.* ¶ 7. If the grievant is unsatisfied by the IGRC's determination, he or she can appeal to the facility Superintendent. *Id.* Upon issuance of the Superintendent's response, the grievant can appeal to the Central Office Review Committee ("CORC")—the third and final step under DOCCS' Incarcerated Grievance Program. *Id.* ¶ 9.

Here, Plaintiff claims that Officer Johnson used excessive force on him on February 2, 2021. Dkt. 1 p. 2. Plaintiff also claims that Officer Banks failed to intervene in that use of force by Johnson. *Id.* Additionally, Plaintiff claims that Officers DeRocco and Demeree were deliberately medically indifferent to his medical needs and that DeRocco committed medical malpractice. *Id.* All of these claims are subject to dismissal based upon Plaintiff's failure to exhaust his administrative remedies.

Plaintiff failed to file a grievance related to the alleged excessive force, failure to intervene, deliberate medical indifference, or medical malpractice on February 2, 2019 or thereafter. Pfendler Decl. ¶ 17 (no grievances filed at Marcy) [2]; Declaration of Brian Edwards ¶¶ 16-17 (no grievances filed at Attica Correctional Facility); *see also* Seguin Decl. ¶ 15 (no appeals to CORC).

---

[2] As it relates the events of February 2, 2021, Plaintiff only filed a Prison Rape Elimination Act ("PREA") complaint on February 17, 2021 alleging that Officer Banks sexually assaulted him. Pfendler Decl. ¶ 19. PREA complaints are not subject to the exhaustion requirement.

This record clearly demonstrates that Plaintiff failed to file a grievance. His failure to exhaust administrative remedies violates the PLRA and warrants dismissal of the relevant claims. *See generally Price v. City of New York*, 2012 WL 3798227, at \*2-3 (S.D.N.Y. 2012); *see also Sanchezmartino v. Demmon*, 2017 WL 1098168, at \*6 (N.D.N.Y. 2017). Thus, the excessive force claim against Officer Johnson, the failure to intervene claim against Officer Banks, the deliberate medical indifference claim against Demeree and DeRocco, and the medical malpractice claims against DeRocco should be dismissed with prejudice because Plaintiff failed to exhaust his administrative remedies. *See Thomas v. Kinderman*, 2017 WL 8293605, at \*6 (N.D.N.Y. 2017) (where a prisoner fails to exhaust administrative remedies and the time in which to exhaust has expired, it is proper for the Court to dismiss the complaint with prejudice because any attempt to exhaust would be futile).

## POINT II

### PLAINTIFF CANNOT ESTABLISH AN EXCESSIVE FORCE CLAIM

In order to establish an Eighth Amendment claim for excessive force, a plaintiff must show that the defendants acted with a sufficient level of culpability and that the injury inflicted was "sufficiently serious to warrant Eighth Amendment protection." *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). Though excessive force claims normally present questions of fact that necessitate trial, the matter can be resolved on motion when the evidence presented demonstrates that no constitutional violation occurred. *See Green v. Morse*, 2009 WL 1401642, \*7, 13 (W.D.N.Y. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt the version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Summary judgment may be awarded when there is nothing in the record to support allegations of excessive force, aside from plaintiff's own contradictory and incomplete

testimony, and even after drawing all inferences in the light most favorable to plaintiff, the court determines that "no reasonable person" could credit his testimony. *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).

In this case, Plaintiff alleges that excessive force was used against him. Specifically, Plaintiff alleges that Officer Johnson "picked [him] up by [his] handcuffs and threw [him] to the point where [his] body flew sideways and hit the ground." Dkt. 1 pp. 2, 4. Video surveillance clearly demonstrates that Plaintiff attempted to kick Officer Banks. Declaration of William Snyder ("Snyder Decl."), Ex. A.[3] The force used was demonstrably appropriate. Thus, Plaintiff's testimony is completely unsupported in the record such that "no reasonable person" could credit Plaintiff's testimony. *See, e.g.*, *Jeffreys*, 426 F.3d at 554.

*Jeffreys* applies only when these three requirements are met: (1) "the plaintiff must rely 'almost exclusively on his own testimony," (2) his or her "testimony must be 'contradictory or incomplete,'" and (3) the plaintiff's testimony must be contradicted by evidence produced by the defense. *Benitez v. Ham*, 2009 WL 3486379, at *20-21 (N.D.N.Y. 2009) (internal citations omitted). The evidence in this case establishes that defendants have satisfied each of the aforementioned requirements.

First, Plaintiff relies exclusively on his own testimony to support his claims. Second, Plaintiff's testimony about the use of force is contradictory and incomplete. Plaintiff's Complaint states that he "decided to come out [of his] cell" and Officer Johnson threw him. Dkt. 1, pp. 2, 4. Plaintiff then testified in his deposition that he blocked his cell door with his feet when officers came to escort him, which he claims was an attempt to prevent them from entering his cell. Haner

---

[3] Exhibit A, which consists of video surveillance footage of the incident, will be submitted to the Court for in-camera review. For security reasons, Plaintiff cannot possess a copy of the video. However, Plaintiff previously viewed this footage in discovery.

Decl., Ex. A pp. 66, 67. Plaintiff's testimony does not mention that Officer Banks bent over to remove a pillow from the cell's entryway, or Plaintiff's attempt to kick him. *Compare* Haner Decl, Ex. A at p. 24 *with* Snyder Decl., Ex. A; Johnson Decl. ¶ 11; Banks Decl. ¶ 9. Third, Defendants have produced overwhelming evidence that completely contradicts Plaintiff's claims. The video evidence is dispositive[4] because it clearly depicts a necessary, appropriate use of force. It also contradicts Plaintiff's testimony that Officer Johnson was alone when Plaintiff was taken out of his cell. Haner Decl., Ex. A pp. 68-69. *See Kalfus v. New York and Presbyterian Hosp*., 476 F. App'x 877, 880–81 (2d Cir. 2012) (the video demonstrated that plaintiff resisted arrest by refusing to stand up or be handcuffed, and that the patrolmen used only reasonable force to overcome his resistance; no reasonable fact finder could conclude that defendants applied excessive force); *Green v. Morse*, 2009 U.S. Dist. LEXIS 42368, at *27 (W.D.N.Y. 2009) (this court may rely on the video evidence clearly showing that some use of force was necessary to grant summary judgment and dismiss plaintiff's excessive force claim) (citations omitted); *Benitez v. Healy*, 2017 U.S. Dist. LEXIS 88227, *12-13 (N.D.N.Y. 2017) (same).

Based on the foregoing, the *Jeffreys* exception should apply and Plaintiff's excessive force claim should be dismissed. *See Jeffreys*, 426 F.3d at 553 ("permitting [plaintiff] to present such incredulous testimony at trial would be a terrible waste of judicial resources and a fraud on the court") (internal citations omitted).

---

[4] The authenticity of the video has been verified by the Deputy Superintendent of Security at Marcy Correctional Facility, William Snyder, who certified: (1) the video footage produced could not be altered [Snyder Decl. ¶ 13]; and (2) any loss or distortion that may be present on the DVD is caused by equipment failure [*Id.* ¶ 14].

### POINT III

### PLAINTIFF'S FAILURE-TO-INTERVENE CLAIMS AGAINST DEFENDANT BANKS SHOULD BE DISMISSED

"[A]bsent a constitutional violation on the part of any [defendants], [plaintiff's] failure-to-intervene claim necessarily fails." *Simcoe v. Gray*, 670 Fed. Appx. 725, 727 (2d Cir. 2016), citing *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *see Addona v. D'Andrea*, 692 Fed. Appx. 76, 78, n. 2; *Jackson v. Village of Ilion, New York*, 2016 WL 126392, at *9 (N.D.N.Y. 2016).

In the case at bar, if the Court dismisses Plaintiff's excessive force claim against Officer Johnson, then the failure-to-intervene claim against Officer Banks necessarily fails and should also be dismissed.

### POINT IV

### PLAINTIFF'S EIGHTH AMENDMENT SEXUAL ASSAULT CLAIM AGAINST DEFENDANT BANKS SHOULD BE DISMISSED

The Second Circuit has explained that an incarcerated person pursuing a sexual abuse claim under the Eighth Amendment must allege both subjective and objective elements, namely that the "officer's intentional contact with an inmate's genitalia or other intimate area . . . serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate[.]" *Crawford v. Cuomo*, 796 F.3d 252, 247 (2d Cir. 2015). The "principal inquiry" a court must make "is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is taken to arouse or gratify the officer or humiliate the inmate." *Id.* at 257-58.

Here, Plaintiff alleges that Officer Banks' hand contacted Plaintiff's buttocks during a use of force for "a split second." Haner Decl., Ex. A p. 77; *see also* Dkt. 1 p. 2; Dkt. 17 p. 1. As explained above, Plaintiff cannot establish an excessive force claim. Banks' alleged touch,

therefore, occurred while carrying out his legitimate, official duty of using force to restrain Plaintiff. Plaintiff testified during his deposition that, merely because no use of force should have occurred at all, Banks' touch constitutes a sexual assault. Haner Decl., Ex. A pp. 108, 110, 111. Plaintiff therefore concedes that Banks' alleged touch was incidental to the use of force, as opposed to a touch intended for sexual gratification. *See also* Declaration of Shane Banks, p. 26 (any incidental touch that may have occurred was necessary). Banks' touch, if it occurred at all, was therefore incidental to his legitimate use of force. Consequently, Plaintiff is unable to make out the objective element of his sexual assault claim—that Banks' contact with Plaintiff's buttocks served no penological purpose.

Even if excessive force had been used against Plaintiff, his claim would still fail because Plaintiff cannot make out the subjective, sexual intent element of his claim. Sexual intent may be inferred from: statements made by a corrections officer, *see, e.g., Crawford*, at 258; from the use of demeaning sexualized remarks, *Shepherd v. Fisher*, 2017 U.S. Dist. LEXIS 22772, at *18 (S.D.N.Y. 2017); from the timing of an assault, *see Bell v. Wolfish*, 441 U.S. 520, 559 (1979); or from a lack of any "legitimate law enforcement or penological purpose for the defendant's alleged conduct," <u>*Boddie*</u>, 105 F.3d at 861 (2d Cir. 1997). *Delee v. Hannigan*, 729 Fed. Appx. 25, 30 (2d Cir. 2018) (collecting cases). Plaintiff made no allegations whatsoever from which an inference of sexual intent could be drawn. In fact, Plaintiff concedes that Banks did not possess the requisite sexual intent because Banks considers contact with his buttocks to constitute a sexual assault solely by virtue of the fact that the use of force was, allegedly, unnecessary. Haner Decl., Ex. A pp. 108, 110, 111.

For the foregoing reasons, Plaintiff's Eighth Amendment sexual assault claim against Banks should be dismissed.

## POINT V

## PLAINTIFF'S MEDICAL INDIFFERENCE CLAIM SHOULD BE DISMISSED

To establish a claim that defendants violated a plaintiff's Eighth Amendment right to adequate medical care, the plaintiff must prove that the defendants were deliberately indifferent to a serious medical need of the plaintiff. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). The plaintiff must prove both that (1) objectively, he suffered a serious medical need, and (2) that subjectively, the defendants acted with deliberate indifference to that medical need. *Id.*

The objective component requires that the alleged deprivation "must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). With respect to the subjective component, a plaintiff must show that the defendant acted with a requisite culpable state of mind – *i.e.*, that he or she "knew of and disregarded an excessive risk to inmate health or safety" and was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and … also draw the inference." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). This proof is necessary to establish that defendants had the requisite culpable state of mind to prove a constitutional violation. *Smith*, 316 F.3d at 183-84.

"In any event, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Farmer v. Brennan*, 511 U.S. 825, 844-45; *see Pooler v. Nassau Univ. Med. Ctr.*, 848 F. Supp. 2d 332, 344 (E.D.N.Y. 2012).

### A.     Plaintiff Did Not Suffer a Serious Medical Need

On February 18, 2021, NP Corigliano examined Plaintiff and determined that there was no evidence of a foreign body in Plaintiff's penis. DeRocco Decl. ¶ 17, Ex. B. Thus, there is no evidence, apart from Plaintiff's testimony, that there was ever an object inserted into Plaintiff's

penis on February 2, 2021. Moreover, DeRocco observed that Plaintiff did not appear to be in any pain on February 3, 4, and 12, 2021. DeRocco Decl. ¶¶ 15, 17, Ex B. Additionally, a February 18, 2021 urine sample appeared normal and appeared to DeRocco to be urinating normally. DeRocco Decl. ¶ 19, Ex. B. Plaintiff also testified that, while he was at a different facility, an Xray was performed and showed nothing inside his penis. Haner Decl., Ex. A at p. 51. Thus, the record demonstrates that Plaintiff did not suffer a serious medical need.

Accordingly, contrary to Plaintiff's conclusory allegations, DeRocco appropriately treated Plaintiff based on his complaints, and neither DeRocco nor Demeree were aware of facts from which the inference could be drawn that Plaintiff had a serious medical need. *Cf. Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 274 (N.D.N.Y. 2018) ("Plaintiff's conclusory allegation that [medical provider] refused to treat him or send him to a hospital fails to plausibly suggest that the defendant was deliberately indifferent to any serious medical need). Thus, the claims against DeRocco and Demeree should be dismissed.

**B.     DeRocco and Demeree Were Not Deliberately Indifferent to Plaintiff's Medical Needs**

Assuming *arguendo* that Plaintiff had a serious medical need, he still cannot prove that defendants DeRocco and Demeree were deliberately indifferent to that need. On the contrary, the record clearly establishes that Plaintiff received timely, appropriate medical treatment. "[I]t is well-established that mere disagreement over the proper course of treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703; *see Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) ("[T]he State is not constitutionally obligated … to construct a perfect plan for [medical] care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls."); *Madison v. Nesmith*, 2009 WL 666398, at *9 (N.D.N.Y. 2009) ("[T]he Eighth Amendment does not afford prisoners a right to medical treatment of their choosing; the question

of what diagnostic techniques and treatments should be administered to an inmate is a classic example of a matter for medical judgment and accordingly, prison medical personnel are vested with broad discretion to determine what method of care and treatment to provide to their patients.") (internal citations and quotation marks omitted).

Here, Plaintiff makes four discrete allegations with regard to denial of medical care: (1) that, during his medical evaluation on February 2, 2021, Plaintiff informed Nurse DeRocco that he inserted pen tips into his penis; (2) DeRocco told Plaintiff to remove the pen tips himself; (3) DeRocco denied Plaintiff proper medical attention; (4) at some time between February 2 and 6, 2021, Plaintiff informed defendant Demeree about the pen tips, indicated to Demeree that he wanted to make a complaint, and Demeree told him that the pen tips would pass; and (5) Demeree did not do anything in response to Plaintiff's statements to Demeree about the pen tips. Dkt. 1 pp. 1, 2, 6, 7. Plaintiff's deliberate medical indifference claims are untenable given the record evidence.

### 1.    DeRocco Provided Plaintiff with Appropriate Medical Treatment

Although Plaintiff makes a conclusory allegation that DeRocco failed to provide proper medical treatment on February 2, 2021, the record evidence establishes that DeRocco medically evaluated Plaintiff and used her professional medical judgment to decide on a course of action, in consultation with the assigned NP. DeRocco Decl. ¶ 20. DeRocco observed on February 3, 4, and 12, 2021 that Plaintiff did not appear to be in any pain. *Id.* ¶¶ 15, 17, Ex. B. She also observed no trauma to Plaintiff's penis or irritation to his urinary meatus on February 2 and 12, 2021. DeRocco Decl. ¶ 10, 17, Ex. B. In response to Plaintiff's complaints about the pen tips, DeRocco consulted with the assigned NP multiple times and arranged for follow-up care by the NP, which care Plaintiff did receive. DeRocco Decl. ¶¶ 11, 16, 17, 19, 21, Ex. B. Further, when NP Corigliano

provided the follow-up care requested by DeRocco, NP Corigliano determined that there was no evidence that any foreign body was inside Plaintiff's penis. DeRocco Decl. ¶ 17, Ex. B. DeRocco also took a urine sample on February 18, 2021, which appeared to DeRocco to be normal. DeRocco Decl. ¶ 19, Ex. B. Thus, DeRocco plainly provided appropriate medical care.

For the reasons stated, the claim against DeRocco should be dismissed.

### 2. Demeree Did Not Deny, Delay, or Intentionally Interfere with Plaintiff's Medical Treatment

Plaintiff's claim that Demeree failed to do anything about Plaintiff's complaints to Demeree about the pen tips at some time between February 2 and 6, 2021 is contradicted by the record evidence. Demeree assisted an OMH psychiatrist with Plaintiff's screening for suicide indicators on February 3, 2021. Demeree Decl. ¶ 7, Ex. A. This screening occurred after Plaintiff had been evaluated by medical providers. Demeree Decl. ¶¶ 10-11. Demeree is not a medical provider and has no medical training or background. *Id.* ¶ 12. Upon Plaintiff's complaint, Demeree reviewed Plaintiff's admission records at the Marcy Residential Crisis Treatment Program, which included health screening records. *Id.* ¶ 10. Demeree's review of these records indicated that Plaintiff's complaint was already being addressed with medical treatment, such that no further action by Demeree was necessary. *Id.* Thus, Plaintiff's claim that Demeree denied him, or interfered or interfered with his, medical treatment must be dismissed. *See Burroughs*, 325 F. Supp. 3d at 274.

For the foregoing reasons, Plaintiff failed to demonstrate that defendants DeRocco and Demeree were deliberately indifferent to his medical needs and these claims should be dismissed.

**POINT VI**

**PLAINTIFF'S STATE LAW MEDICAL MALPRACTICE CLAIM MUST BE DISMISSED AS A MATTER OF LAW**

It is well-established, pursuant to the *Erie* doctrine, that when a federal court is confronted with whether to apply federal or state law in a case, the federal court must apply state law on issues of substantive law and federal law on issues of procedural law. *Erie R.R. v. Tompkines,* 304 U.S. 64 (1938). Accordingly pursuant to New York State substantive law, in a medical malpractice action, the plaintiff must prove that the defendant deviated from accepted standards of care, and that the deviation was the proximate cause of an injury to the plaintiff. *Skelly-Hand v. Lizardi,* 111 A.D.3d 1187 (3d Dept. 2013); *Adams v. Anderson,* 84 A.D.3d 1522 (3d Dept 2011); *Valentine v. Lopez,* 283 A.D.2d 739, 741 (3d Dept. 2001); and *Giambona v. Stein,* 265 A.D.2d 775, 776 (3d Dept. 1999).

When moving for summary judgment, a defendant must submit admissible evidence which establishes *prima facie* that he is entitled to such relief as a matter of law. *Rossi* v. *Arnot Ogden Medical Center,* 268 A.D.2d 916,917 (3d Dept. 2000), *lv. denied,* 95 N.Y.2d 751 (2000); *see also, Olinsky-Paul* v. *Jaffe,* 105 A.D.3d 1181 (3d Dept. 2013). This burden can be met by the submission of factual proof in the form of deposition testimony, documents and/or a detailed factual affidavit of the defendant. *Suib* v. *Keller,* 6 A.D.3d 804 (3d Dept. 2004); *Toomey* v. *Adirondack Surgical Assocs.,* 280 A.D.2d 754, 755 (3d Dept. 2001); *see also, Menard* v. *Feinberg,* 60 A.D.3d 1135 (3d Dept. 2009); *Amodio v. Wolpert,* 52 A.D.3d 1078, 1079-1080 (3d Dept. 2008); *Sloane v. Repsher,* 263 A.D.2d 906,908 (3d Dept. 1999); *Horth v. Mansur, 243* A.D.2d 1041 (3d Dept. 1997); and *Stewart v. Ellis Hospital*, 198 A.D.2d 559,560 (3dDept. 1993).

If the defendant makes such a showing, the burden then shifts to the plaintiff to prove by

admissible evidence—including expert medical proof—that there is a material, triable issue of fact. CPLR § 3212(b); *Skelly-Hand v. Lizardi, supra; Suib v. Keller, supra; Adams v. Anderson, supra; Zuckerman v. City of New York,* 49 N.Y.2d 557, 562 (1980); and *Giambona v. Stein, supra.* The plaintiff has a dual burden which entails submission of an expert medical affidavit attesting to a departure from accepted practice and that the defendant's departure was a competent producing cause of the plaintiff's injury. *Delorenzo v. St. Clare's Hospital of Schenectady,* 69 A.D.3d 1177 (3d Dept. 2010) (summary judgment affirmed where plaintiff had not presented any expert testimony that the care rendered by defendant departed from the accepted standards of medical practice); *Chase v. Cayuga Medical Center at Ithaca, Inc.,* 2 A.D.3d 990, 991 (3d Dept. 2003) (Based on the lack of admissible expert proof that defendant deviated from accepted practices or that such negligence proximately caused decedent's death, summary judgment was appropriate); and *Domaradzki v. Glen Cove,* 242 A.D.2d 282 (2d Dept. 1997) (To oppose a motion for summary judgment dismissing a cause of action sounding in medical malpractice, a plaintiff must submit a physician's affidavit of merit attesting to a departure from accepted practice and containing the attesting doctor's opinion that the defendant's omissions or departures were a competent producing cause of the injury).

Here, as discussed in Point V *supra,* Defendants have made a showing that they are entitled to relief as a matter of law by submission of factual proof in the form of documents and a detailed factual affidavit of the relevant defendant. Plaintiff cannot defeat such a motion without an expert affidavit. *See, e.g., Delorenzo v. St. Clare's Hospital of Schenectady,* 69 A.D.3d 1177. The deadline for discovery has passed, and Plaintiff has not disclosed an expert. Dkt. 64.

For the foregoing reasons, Plaintiff's claim against defendant DeRocco for state law medical malpractice must be dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment should be granted and the Complaint should be dismissed in its entirety, together with any other relief that this Court deems just and proper.

Dated: Albany, New York
　　　　September 26, 2022

　　　　　　　　　　　　　　　　　　　LETITIA JAMES
　　　　　　　　　　　　　　　　　　　Attorney General of the State of New York
　　　　　　　　　　　　　　　　　　　Attorney for Defendants
　　　　　　　　　　　　　　　　　　　The Capitol
　　　　　　　　　　　　　　　　　　　Albany, New York 12224


　　　　　　　　　　　　　　　　　　　By: *s/ Brittany M. Haner*
　　　　　　　　　　　　　　　　　　　Brittany M. Haner
　　　　　　　　　　　　　　　　　　　Assistant Attorney General, of Counsel
　　　　　　　　　　　　　　　　　　　Bar Roll No. 700987
　　　　　　　　　　　　　　　　　　　Telephone:  (518) 776-2389
　　　　　　　　　　　　　　　　　　　Fax:  (518) 915-7740 (Not for service of papers)
　　　　　　　　　　　　　　　　　　　Email: brittany.haner@ag.ny.gov

TO:　　Rashaun Blanford, *Pro se*
　　　　#18-B-0908
　　　　Marcy Correctional Facility
　　　　P.O. Box 3600
　　　　Marcy, New York  13403-5000